WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Maycock,<br><br>Plaintiff,<br><br>v.<br><br>Phoenix Motor Company,<br><br>Defendant. | No. CV-17-01303-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Phoenix Motor Company's Motion for Summary Judgment, (Doc. 11), and Supplement to Its Motion for Summary Judgment, (Doc. 25). For the following reasons, the Court denies the motion in part and grants it in part. (Docs. 11, 25).

## BACKGROUND

### I. Contract Claims

Phoenix Motor Company's ("PMC") General Manager, Al LeMoine, hired Alan Maycock as its Marketing Director on January 2, 2013. Mr. LeMoine had previously worked with Mr. Maycock at another car dealership. PMC agreed to pay Mr. Maycock $180,000 per year for his work as Marketing Director. The employment contract included a provision that PMC would later address the possibility of paying Mr. Maycock a percentage of the company's sales.

About ten months later, PMC ownership moved the dealership from Phoenix to Scottsdale. At this time, Mr. LeMoine asked Mr. Maycock to perform some

responsibilities of a General Sales Manager ("GSM"). PMC claims that it never fully promoted Mr. Maycock to work as the GSM but gave him only some GSM responsibilities. Mr. Maycock claims that PMC fully promoted him to work as the GSM. (Doc. 1-7 at 6–7). At the promotion, Mr. Maycock claims that Mr. LeMoine orally agreed to pay Mr. Maycock commissions based on a percentage of PMC's sales, but the two never agreed to the specific details of any additional compensation as GSM. PMC did give Mr. Maycock access to a demo car, part of a normal compensation package for GSMs. (Doc. 1-7 at 10, ¶ 2).

During this period, employees at PMC regularly referred to Mr. Maycock as the GSM. For example, Mr. LeMoine once referred to Mr. Maycock as the GSM in a company-wide email. (Doc. 1-4 at 8, ¶ 43). PMC's HR Director stated that Mr. Maycock was the GSM. (Doc. 1-7 at 4, ¶ 29). And, PMC's website displayed Mr. Maycock as the GSM. (Doc. 1-7 at 2, ¶ 5).

PMC continued to pay Mr. Maycock his original salary of $15,000 per month ($180,000 per year), but PMC never paid additional commissions to Mr. Maycock. Mr. Maycock discussed PMC's failure to pay him a commission multiple times. Then, after Mr. Maycock had performed the responsibilities of a GSM for about ten months, Mr. LeMoine asked Mr. Maycock to focus solely on the Marketing Director responsibilities, and Mr. Maycock lost the perk of driving the demo car. Despite Mr. Maycock's requests, PMC never paid him any commissions as GSM.

Mr. Maycock filed a complaint in Arizona state court alleging breach of contract and other related claims in September 2015, (Doc. 1), and PMC eventually filed a Motion for Summary Judgment on these claims, (Doc. 11).

**II. Discrimination Claims**

Mr. Maycock is a Seventh-day Adventist. In his practice of the tenets of his religion, Mr. Maycock does not work Saturdays but observes the Sabbath as a holy day from Friday sunset through Saturday sunset. Because of their previous relationship, Mr. LeMoine was aware of Mr. Maycock's religious commitments when he hired him and

Mr. LeMoine accommodated his Sabbath observance.

As noted, the dealership moved locations from Phoenix to Scottsdale between Friday, December 27, 2013 and Tuesday, December 31, 2013. Mr. Maycock did not help with the physical move during his Sabbath, but he did go to the new location on Saturday evening to unpack his personal materials and sweep the showroom floor. Mr. Maycock did not assist with the move on Sunday. It was coincident with the move to the new location, that Mr. Maycock alleges he began performing GSM responsibilities.

One of the responsibilities of a GSM is to conduct weekly meetings with the sales team. This meeting typically took place on Saturdays. Mr. Maycock stated that he had the option of moving this meeting to another day, but he chose to review the meeting agenda on Friday and keep the meeting on Saturday when the rest of the sales team was at the dealership. (Doc. 1-7 at 18). When asked if it bothered him that Mr Maycock did not work Saturdays, Mr. LeMoine stated that it did not bother him. (Doc. 30 at 3–4; LeMoine Dep. 68:10–70:6). Mr. Maycock also stated that "LeMoine supported my decision to not move the meeting day," and "never at any time did LeMoine or any other person ask me to change my schedule." Mr. Maycock admitted that "Mr. LeMoine never got upset at Maycock for not attending sales meetings on Saturdays." (Doc. 30 at 5). A subsequent GSM moved the sales meetings to Thursday with Mr. LeMoine's approval. (Doc. 1-5 at 48). And, Mr. Maycock confirmed PMC's claim that Mr. LeMoine never asked him to work on Saturdays. (Doc. 1-7 at 6–7).

In deposition testimony on August 30, 2016, Mr. LeMoine stated that Mr. Maycock's absence from the physical move to the new Scottsdale location both bothered him and "bothered everybody in the store." (Doc. 30 at 3–4; LeMoine Dep. 69:16). Counsel for Mr. Maycock asked Mr. LeMoine if these feelings impacted his decision to take away Mr. Maycock's responsibilities as General Sales Manager. Mr. LeMoine said, "I have no idea." When counsel subsequently clarified, "You don't know if that affected your decision in any way?" Mr. LeMoine responded, "Oh, no, no." (Doc. 30 at 4; LeMoine Dep. 70:1–6).

After hearing Mr. LeMoine's deposition testimony, Mr. Maycock filed a charge of religious discrimination with the EEOC on December 21, 2016. (Doc. 26, Exh. 4). He amended his original contract complaint to include a claim of employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and a similar claim under Arizona state law. Mr. Maycock alleges that Mr. LeMoine's deposition testimony shows that PMC demoted Mr. Maycock from the GSM position and failed to pay him commissions due to his religious commitment to observe the Sabbath.

Because of the new federal discrimination claim, PMC removed the case to Federal Court. (Doc. 1). PMC subsequently filed this supplement to its motion for summary judgment to address the religious discrimination issues. (Doc. 25).

## DISCUSSION

### I. Legal Standard

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the evidence "in a light most favorable to the non-moving party." *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

**II.     Contractual Claims and Retaliation**

An enforceable contract consists of an offer, an acceptance, consideration, and "sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co. v. Hoes & Son Constr. Co.*, 112 Ariz. 392, 394 (1975). The uncertainty of the terms "may indicate that a proposal or acceptance was not intended to be understood as a binding offer or acceptance." *Schade v. Diethrich*, 158 Ariz. 1, 9 (1988). However, the actions of the parties may conclusively show intent to be bound "even though one or more terms are missing or are left to be agreed upon." *Id.* (quoting Restatement (Second) of Contracts § 33, Comment a); *see also* Restatement (Second) of Contracts § 33, Comment e, Illustration 8 ("A promises to do a specified piece of work and B promises to pay a price to be thereafter mutually agreed. The provision for future agreement as to price strongly indicates that the parties do not intend to be bound. If they manifest an intent to be bound, the price is a reasonable price at the time for doing the work."). When actions indicate a contract despite uncertain terms, "courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Schade*, 158 Ariz. at 9 (quoting Restatement (Second) of Contracts § 33, Comment a). In short, notwithstanding a lack of definite terms, actions that manifest intent to be bound may show a binding employment contract.

As an undisputed fact, PMC and Mr. Maycock did not agree to specific terms for any additional compensation while Mr. Maycock worked as the GSM. (Doc. 1-7 at 5, ¶ 34). However, the parties dispute whether their actions manifest intent to be bound. PMC potentially promoted Mr. Maycock to the GSM position, as supported by the HR Director's testimony that Mr. Maycock was the GSM, (Doc. 1-7 at 4, ¶ 29), Mr. LeMoine's company-wide email indicating that Mr. Maycock was the GSM, (Doc. 1-4 at 8, ¶ 43), and PMC's website referring to Mr. Maycock as the GSM, (Doc. 1-7 at 2,

1  ¶ 5). PMC gave Mr. Maycock access to a demo car, part of a normal compensation package for GSMs. (Doc. 1-7 at 10, ¶ 2). Mr. Maycock also testified that Mr. LeMoine repeatedly agreed to pay him a portion of PMC's gross sales during his employment as GSM. (Doc. 1-7 at 10, ¶ 2; Doc. 1-7 at 12, ¶ 10). Viewing the facts in a light most favorable to the plaintiff, the parties' actions potentially indicated intent to be contractually bound. Separately, both parties agree that the retaliation claim depends on the existence of a contract. Therefore, the Court denies Defendant's Motion for Summary Judgment concerning Counts One, Two, Three, Four, and Five.

### III. Equitable Claims

Unjust enrichment arises when "a person has and retains money or benefits which in justice and equity belong to another." *City of Sierra Vista v. Cochise Enterprises*, 155 Ariz. 375, 381 (App. 1984) (citation omitted). Arizona law requires plaintiffs to prove five elements to recover for unjust enrichment: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law." *Cmty. Guardian Bank v. Hamlin*, 182 Ariz. 627, 630 (App. 1995) (citations omitted). When a party prevails on a theory of unjust enrichment, quantum meruit determines the measure of damages. *Western Corrections Group v. Tierney*, 208 Ariz. 583, 590 (App. 2004) (citation omitted). Recovery under *quantum meruit* is calculated as the value of services rendered. *Landi v. Arkules*, 172 Ariz. 126, 135 (App. 1992).

To prove promissory estoppel, Mr. Maycock must show that PMC made a promise and that he relied on that promise to his detriment. *Higginbottom v. State*, 203 Ariz. 139, 144 (App. 2002). Arizona follows the Restatement (Second) of Contracts (1981) for claims of promissory estoppel, which requires a plaintiff to show that "injustice can be avoided only by enforcement of the promise." *Chewning v. Palmer*, 133 Ariz. 136, 138 (1982) (quoting Restatement (Second) of Contracts § 90).

As noted above, Mr. Maycock offered evidence that PMC promoted him to the

GSM position. He also offered evidence that a typical GSM would receive more compensation than he received. Accordingly, Mr. Maycock presents a factual dispute concerning whether PMC retained money or benefits that in justice and equity belonged to Mr. Maycock. Additionally, automotive groups typically pay sales representatives a commission to incentivize sales, and Mr. Maycock can present evidence that he exerted himself as GSM in reliance on PMC's promise to pay him commissions. The Court denies PMC's Motion for Summary Judgment concerning Count Six and Seven.

## IV. Statute of Limitations

The statute of limitations for "breach of an oral or written employment contract" is "one year after the cause of action accrues." A.R.S. § 12-541(3). Concerning tolling statutes of limitations, a defendant's "acknowledgement of the justness" of a claim must be in writing and signed to be admitted in evidence. A.R.S. § 12-508. A defendant is barred from raising the statute of limitations if he or she induces a plaintiff to believe that the claim will be settled without the need of litigation. *Nolde v. Frankie*, 192 Ariz. 276, 280 (1998) (citing *Roer v. Buckeye Irrigation Co.*, 167 Ariz. 545, 547 (App. 1990)). The four part test requires that (1) a plaintiff must identify specific promises, threats, or inducements that prevented the plaintiff from filing suit; (2) these promises, threats, or inducements must actually induce the plaintiff from filing suit; (3) the defendant's conduct would reasonably cause a plaintiff to forbear filing an action; and (4) the plaintiff must file suit within a reasonable time. *Nolde*, 192 Ariz. at 280. Per step one, "[v]ague statements or ambiguous behavior by the defendant will not suffice." *Id.* Per step three, "a court must determine whether the defendant's conduct resulted in duress so severe as to deprive a reasonable person of the freedom of will to file the action." *Id.* (citation omitted). Ordinarily, these questions are determined by the factfinder, but "a court appropriately may conclude as a matter of law that no reasonable jury could find for the plaintiff on one or more of these inquiries." *Id.* at 281 (citation omitted).

As evidence of inducement, Mr. Maycock relies on Mr. LeMoine's oral assertions that PMC would pay Mr. Maycock his GSM compensation. No representatives of PMC

ever acknowledged in a signed writing that it had an obligation to pay Mr. Maycock additional compensation or commissions as GSM. Consequently, the Court does not consider Mr. LeMoine's statements to the extent that they are an acknowledgment of the justness of Mr. Maycock's claims, and Mr. Maycock may not toll the statute of limitations on a theory that PMC acknowledged its obligation.

In one conversation concerning PMC's failure to pay, Mr. LeMoine said, "It's been really busy . . . [A]ll I can do is apologize . . . But I'm going to get you squared away." (Doc. 1-5 at 32; Maycock Dep. 45:6–15). When Mr. LeMoine relieved Mr. Maycock of the GSM responsibilities, Mr. Maycock stated that he had not yet been paid the GSM compensation and Mr. LeMoine stated, "I know . . . I'll take care of it. I'm going to take care of it." (Doc. 1-5 at 32; Maycock Dep. 46:15–20). These statements are not "so severe as to deprive a reasonable person of the freedom of will to file the action." *Nolde*, 192 Ariz. at 280. Although Mr. Maycock hoped that PMC would pay him according to PMC's statements, he points to no other specific promises, threats, or inducements that led him to believe that he did not need to file a lawsuit. Mr. Maycock filed his complaint on September 30, 2015. (Doc. 1). Therefore, any withheld payments prior to September 30, 2014 are barred for recovery by the statute of limitations. PMC is granted summary judgment on all such claims.

## V. Punitive and Treble Damages

Punitive damages are not available for breach of contract unless a tort accompanied the breach. *Miscione v. Bishop*, 130 Ariz. 371, 374–75 (App. 1981); Restatement (Second) of Contracts § 355 ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable"). Because Mr. Maycock's claims arise out of breach of contract, the Court grants Defendant's Motion for Summary Judgment concerning punitive damages.

Separately, under Arizona law, if an employer fails to pay wages due to an employee, the employee may recover treble damages. A.R.S. § 23-355. This provision

is "directed against employers who delay paying wages without reasonable justification or who try to defraud employees of rightfully-earned wages." *Patton v. Mohave Cnty.*, 154 Ariz. 168, 172 (App. 1987) (citation omitted). Treble damages should not be awarded if the parties present a reasonable, good-faith wage dispute. *Id.* (holding that a defendant's clerical errors and refusal to investigate the error did not constitute a good-faith dispute).

Mr. Maycock presented sufficient evidence for a jury to conclude that he had a contract with PMC to receive additional commissions, and the jury could also find that PMC delayed paying these commissions without reasonable justification. Mr. Maycock asked PMC about the missed payments multiple times, and PMC never followed through to remedy the proposed error in a timely way. Although the missed payments may stem from a good-faith dispute, the jury could also find the opposite. The Court denies Defendant's Motion for Summary Judgment concerning treble damages.

## VI. Discrimination Claims

### A. Statute of Limitations

PMC argues that Mr. Maycock's discrimination claim is untimely. Under Title VII, a claimant must file a charge of religious employment discrimination with the EEOC within 180 days after the unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Courts treat this requirement as a statute of limitations that is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The time period for filing a claim of discrimination starts when the facts supporting a discrimination charge "would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985). Equitable tolling focuses on whether the plaintiff missed the deadline due to excusable delay. *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). If a reasonable plaintiff would not have known about the grounds for a discrimination claim during the time period, then tolling allows the plaintiff time to gather the appropriate information to file a claim. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir.

2000).

Mr. Maycock claims that he did not know about PMC's discriminatory conduct at the time of discrimination. He claims that he learned of potential discrimination only when Mr. LeMoine's deposition testimony described how Mr. Maycock's physical absence from the move bothered people at the dealership. This report led Mr. Maycock to believe that Mr. LeMoine was upset with him for not working on Saturdays during the next ten months, although Mr. Maycock was unaware of any potential bias during his employment. (Doc. 26, Exh. 1, Maycock Dep. 106:3–19, 108:7–18).

Although limited, the best evidence for discrimination comes from Mr. LeMoine's deposition testimony. Viewing the timeliness issue in a light favorable to Mr. Maycock, the Court will consider the discrimination claim on the merits.

### B. Title VII Discrimination Claim

Federal law states that it is unlawful for an employer to discriminate against an employee with respect to compensation or privileges of employment because of the employee's religion. 42 U.S.C. § 2000e-2. To succeed under this law, the employee must first establish a prima facie case of discrimination. If the employee shows a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its conduct. If the employer meets this burden, the employee must then demonstrate that the employer's articulated reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

    1.    Prima Facie Case

To establish a prima facie case, the employee may either present direct or circumstantial evidence of discriminatory intent. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citations omitted). A prima facie case based on circumstantial evidence requires a showing that (1) plaintiff is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably. *Godwin*, 150 F.3d at 1220 (citing *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973)). At this stage, an employee need only present evidence that suggests an inference of unlawful discrimination. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Mr. Maycock is a member of a protected class as a Seventh-day Adventist. He experienced an adverse employment action when he lost the privilege of the demo car, and PMC paid the subsequent non-Sabbatarian GSM more than Mr Maycock.

The primary basis for this complaint is the fact that Mr. LeMoine testified in deposition that he and others at PMC were upset that Mr. Maycock was not physically present to move the dealership over a period of a few days, including Mr. Maycock's Sabbath. Given the low threshold, the Court assumes that Mr. Maycock successfully presents a prima facie case of discrimination. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) ("Nevertheless, despite the weaknesses in the evidence offered by [plaintiffs] to establish their prima facie cases, given the low threshold required, we assume, without deciding, that [the plaintiffs] have established such a case").

2. Legitimate, Nondiscriminatory Reason

PMC must now articulate a legitimate, nondiscriminatory reason for asking Mr. Maycock to stop performing the GSM duties. PMC meets this burden. In addition to the claim that Mr. Maycock performed the responsibilities of GSM poorly, PMC also claims that it reassigned Mr. Maycock to better focus on his tasks as Marketing Director. (Doc. 26, ¶ 24). In an email announcing the change, Mr. LeMoine stated that Mr. Maycock "will return to his duties as full time Marketing Director" because "it is clear that our marketing needs requires full time effort and complete focus." (Doc. 1–5 at 45). Mr. Maycock testified in deposition that Mr. LeMoine relieved him of the GSM position because Mr. Maycock had too much to do and should focus on the Marketing Director responsibilities. (Doc. 26; Maycock Dep. 111:17–112:1).

Other testimony supports this claim that Mr. Maycock needed to focus on marketing. Mr. LeMoine testified that during Mr. Maycock's tenure with GSM

- 11 -

responsibilities, "the marketing side of the business [was] not being attended to" and Mr. Maycock needed "to go back and focus on marketing." (Doc. 1–4 at 59; LeMoine Dep. 65:5–12). Mr. Maycock maintained the dealership website as the Marketing Director, and one employee declared that during this time that the website "often contained mistakes about inventory" and listed the wrong address for the dealership. (Doc. 1–5 at 18).

### 3. Pretext

The burden shifts back to Mr. Maycock to show that the legitimate, nondiscriminatory reasons for the employment decision are merely a pretext for discrimination. If the plaintiff presents direct evidence of discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. Direct evidence proves discriminatory animus without inference or presumption and "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citing *Godwin*, 150 F.3d at 1221). If the plaintiff relies on circumstantial evidence at the pretext stage, the evidentiary threshold is no longer an inference of discrimination, but the evidence must be both specific and substantial to create a triable issue of fact. *Godwin*, 150 F.3d at 1222; *Wallis*, 26 F.3d at 890. The focus of the pretext question is whether the employer truly had discriminatory intent. *Green v. Maricopa Cnty. Cmty. Coll. Sch. Dist.*, 265 F.Supp.2d 1110, 1128 (D. Ariz. 2003) (*quoting Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered")).

In briefs and at oral argument, Maycock did not present evidence that proved animus without inference or consisted of clearly discriminatory statements. *See Coghlan*, 413 F.3d at 1095. Because Mr. Maycock does not present direct evidence of discrimination, he must provide circumstantial evidence that is specific and substantial.

To prove discriminatory intent, Mr. Maycock argued that Mr. LeMoine

equivocated in his deposition concerning questions of Mr. Maycock's religious commitment. As one example, Mr. LeMoine was upset that Mr. Maycock did not help move the dealership on Saturday, and when asked at deposition whether this feeling influenced his decision to reassign Mr. Mayock, Mr. LeMoine responded, "I have no idea." (Doc. 30 at 4; LeMoine Dep. 70:1–6). But, when defense counsel restated the question and asked if it affected the reassignment in any way, Mr. LeMoine responded, "Oh, no, no." *Id.* For other evidence of discriminatory intent, Mr. Maycock argued that he performed the responsibilities of a General Sales Manager well, as supported by the fact that PMC's revenues were nearly seventy-three percent higher under his leadership than during the previous year, and sales declined during the tenure of the next General Sales Manager. Mr. Maycock also argued that PMC repeatedly complained that he did not attend sales meetings on Saturdays.

Maycock's argument that PMC reassigned him because of his Sabbath observance is not supported by the fact that Maycock testified that "never at any time did LeMoine or any other person ask me to change my schedule," and he admitted that "Mr. LeMoine never got upset at Mayock for not attending sales meetings on Saturdays." (Doc. 30 at 5).

The same-actor inference argues against this claim of discrimination. When the same actor is responsible for both favorable and unfavorable employment actions, and both actions occur within one year, "a strong inference arises that there was no discriminatory action." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1096 (9th Cir. 2005) (*quoting Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)). The same-actor inference is not limited to a jury instruction, but it is a strong inference that a court must consider on summary judgment. *Coghlan*, 413 F.3d at 1098 (citing *Bradley*, 104 F.3d at 271).

Without dispute, Mr. LeMoine knew about Mr. Maycock's religious commitment and accommodated him for multiple favorable employment decisions. Mr. LeMoine hired Mr. Maycock to work at PMC, gave Mr. Maycock the GSM responsibilities, and accommodated his Sabbath observance for the entirety of their shared employment,

including the ten month period when Mr. Maycock performed GSM duties. When sales staff complained to Mr. LeMoine that Mr. Maycock did not attend sales meetings, Mr. LeMoine told the sales staff about Mr. Maycock's religious accommodation and that he did not need to work at PMC on Saturdays. The same-actor inference strongly suggests that PMC did not discriminate against Mr. Maycock.

Further, the gap of time between Mr. LeMoine's alleged bias and the alleged discriminatory acts contends against discriminatory intent. Mr. Maycock started to perform the GSM duties two days after his absence from the move upset Mr. LeMoine. Mr. Maycock then performed the GSM responsibilities for a full ten months before Mr. LeMoine relieved him of these additional duties. During this ten month period, Mr. LeMoine accommodated Mr. Maycock's Sabbath observance. In the context of Title VII retaliation suits, a ten month gap is generally insufficient to suggest a causal connection between protected activity and discriminatory conduct. *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003) ("[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation"); *Lesane v. Aloha Airlines, Inc.*, 226 Fed.Appx. 693, 698 (9th Cir. 2007) (holding that without additional evidence, a six month gap between the protected act and the discriminatory conduct is not sufficiently proximate in time to raise an inference of discrimination).

Accordingly, Mr. Maycock's arguments do not provide specific and substantial evidence of a pretext for discrimination, nor do they substantially show that PMC was dishonest when it claimed that it reassigned Mr. Maycock for nondiscriminatory reasons. The claim that Mr. LeMoine was upset that Mr. Maycock did not work one Saturday and then subsequently discriminated against him ten months later does not amount to specific and substantial evidence of pretext. For these reasons, the Court grants Defendant's Motion for Summary Judgment concerning Count Eight.

**C.     State Discrimination Claim**

Similar to Federal law, Arizona law makes it unlawful for an employer to

discriminate against an employee because of the employee's religion. A.R.S. § 41 – 1463(B)(1). The Arizona Civil Rights Act is essentially identical to Title VII, and consequently, Title VII law is persuasive when interpreting the Arizona Civil Rights Act. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004); *Everts v. Sushi Brokers LLC*, 247 F.Supp.3d 1075, 1084 (D. Ariz. 2017). Therefore, the Court grants Defendant's Motion for Summary Judgment concerning Count Nine.

**VII. Subject Matter Jurisdiction Over Remaining State Law Claims**

If a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c)(3). At oral argument, both parties requested that this dispute remain in federal court. Therefore, this Court will keep jurisdiction for "principles of judicial economy, procedural convenience, [and] fairness to litigants." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988).

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Docs. 11, 25) is denied in part and granted in part as follows:

1. It is **DENIED** as to Counts One, Two, Three, Four, Five, Six and Seven.
2. It is **DENIED** as to treble damages.
3. It is **GRANTED** as to Counts Eight and Nine.
4. It is **GRANTED** as to punitive damages.
5. It is **GRANTED** as to the statute of limitations, and Plaintiff may not recover for any claim stemming from activity prior to September 30, 2014.

Dated this 8th day of December, 2017.

Honorable G. Murray Snow
United States District Judge